Thank you, Your Honor. May it please the Court, my name is Terry Smolianic. I represent the appellant in this case, Stephen Yeagley, and the class that was certified in this case pursuant to the settlement. I would like to reserve two minutes of my ten minutes for rebuttal time. Will the red light go off when the eight minutes is up? No, you have to just monitor your own time. Thank you, Your Honor. Your Honor, we are here. There are clearly two matters before this Court. One is the fact that the district judge in this case entered an order on fees, which was clearly contrary to established law in the Ninth Circuit and the Supreme Court. And we are asking this Court to reverse that judgment and, in fact, to direct the Court to enter a judgment in accordance with the clear case law in the Ninth Circuit and award those fees based upon the amount of benefits that were made available to the class of 3.8 million people, as opposed to the actual benefits that were taken by the class. Which is $114 million? Excuse me, Your Honor? Which is $114 million? Yes, Your Honor, but we would contend that even given the district court's incorrect analysis of the settlement, in which the Court only considered the first tri-merge credit report and FICO scores, which the – which were not – a value wasn't placed on it just out of thin air, but that's what the defendants were paying, $15.50. The Court refused to consider the fact that there was a second tri-merge report that was available and just considered the first one. He considered it. He just didn't think it was worth anything. Right. Right. But what I'm saying is even if you just – He considered it, though. Well, he completely discounted the second credit report. Let me ask you a question. Yes, Your Honor. In your statement from the ER in the Yeagley v. Wells Fargo settlement agreement, what does this mean? Defendants will not oppose any application for class counsel for an award of costs and fees to class counsel that does not exceed $1,500,000. Wasn't there agreement that anything that was short of that would be okay? Your Honor, there was an agreement that the district court could exercise this discretion based upon the analysis of the record, but there was never an agreement that the district court could ignore case law completely. This settlement agreement did not give the court unfettered discretion, unbound by any rules of law. In the final settlement, though, there was no reservation of right to appeal that. Your Honor, the – there was a – there was the statement that any application – the defendant would not oppose any application. And in this situation, just as in every class settlement, the parties are not free to engage in whatever settlement they come to among themselves. Under Rule 23, they have to go to the district court and get the district court to enter its own findings and conclusions in that regard. The district court – By what case or law should we accept all of this extraneous material that's coming in that's not in the record? Your Honor, even the Slavin decision itself and the cases that discuss Slavin show that the appellate court should consider what the actual intent of the party was. With material that's not in the record? Yes, Your Honor, because this is not something that is arguing whether the district court was misled or not. This has to do the Slavin case and its progeny. The Slavin says material that's not in the record should be considered. The Slavin case considered the cover letter that accompanied the judgment that was submitted to the court. The cover letters submitting judgments are not part of the record. And the other cases, in addition to Slavin, that we cited in our brief, also, in fact, the Hawaiian Paradise case from this court. In there, they considered the fact – they looked at the intent of the appellee and the appellants, and they considered that what's important here is whether or not the appellee is being blindsided. Well, it isn't clear to me that the cover letter was not part of the record. Quote, moreover, a cover letter from the fund's attorney attached to the stipulation. Well, Your Honor, as – even in the Campbell case. In the Campbell case, the district – the appellate court simply turned to defense counsel during oral argument and said, did you know or not know that the appellants were going to appeal this issue? We show – and, in fact, the appellee's own brief – the appellee's own brief even excluding everything that the – that the clerk's order did not allow under the record. The appellee's own brief states, Wells Fargo Council has never denied that Yagley's council discussed their intentions to appeal the award of attorney's fees. That's the exact issue that the Hawaiian Paradise, the Slavin, and these other cases considered. It's not whether the district court was misled, because this isn't a situation where two parties consent to a judgment and then go to a district court and say, here, please sign this consent judgment. And then one side says, oh, guess what, we've decided we're going to appeal, even though we've agreed to this consent judgment. Is this a common fund case? Absolutely, Your Honor. Absolutely. Absolutely. This is a common fund case. The defendant agreed to pay $15.50 apiece. But there was no agreement to make this a common fund, right? I mean, this is a – it's a nonmonetary settlement. It's including injunctive relief whose value is obviously disputed. It's paid for by the defendants, not from the plaintiffs. So I couldn't see how it matched up with our common fund jurisprudence at all. Why is it a common fund? Your Honor, because the defendant agreed to pay. But there's no agreement that the court should analyze this as a common fund, which under Staten v. Boeing, that's really the only situation where a noncommon fund can be treated as a common fund. Yes, Your Honor. But I think if you look at all of the cases that are comparable to this case in terms of its settlement by providing a benefit to the class that costs the defendant something per class member, one sees that in every one of those cases they were treated as common fund cases. Common fund cases are not simply here's a pot of cash and the class members can come to it and withdraw from it. Well, that's sort of what it says, right, that there's money going to the plaintiffs that's definable and it's a contingency fee type arrangement out of the plaintiffs' pot of money. And that that's what constitutes the common fund analysis. No, Your Honor. I would disagree. I think that all of the cases in this area show that where the defendant has agreed to provide a benefit such as this, which has a real value, the Allstate case, the Progressive case, the e-loan case in the district court, all of these cases treated these as a common fund case because the defendant is agreeing to pay out of its own pocket something that's going to cost it up to $114 million should all the class members agree to take it. That's what's considered a common fund. The defendant gets a windfall if, in fact, not all the class members take it and, in fact, all class members don't take it. Now, Stanton v. Boeing suggests that where it's statutory fee shifting then we use load star method or the court should use a load star method to analyze it unless the parties agree that a common fund method would be used. Your Honor, that's true. But this is this. That is true. It is true. But this is not a statutory fee shifting when you've created a common fund. And there's this there's a lot of this. Didn't Judge Breyer say because it wasn't willful it could only be statutory? Well, that's. Did he say that? He said that. But that's where he's starting to reach the merits of the case. This this. Merits of what case? This case. This complaint was based upon willful violations. The parties chose to settle this case. Judge Breyer. Was there a stipulation that they were willful? Of course not, Your Honor. The defendant denied all liability. Why doesn't that also apply to the determination of what the damages are? Because so you say he was wrong on that, too. I'm saying the district judge, by intruding into the merits of this case and exercise and stating his opinion as to this case having no merit, violated the clear law that that is not the function of a district court in evaluating a settlement such as this. It's the parties that understand the merits of the case. It's the parties that negotiated that. If Wells Fargo thought this case was meritless, Wells Fargo could have insisted on going to trial or seeking a summary judgment. The parties in this case are the ones that determine whether or not this case had any merit and so to what extent it did. And I see my eight minutes is up, Your Honor, and I will reserve my two minutes. Thank you. Good afternoon, Your Honors. Michael Steiner on behalf of the defendant, Wells Fargo Bank. First, I'd like to address the sort of jurisdictional waiver or estoppel-by-contract argument that we spent some time talking about. Our first point is we don't think we should be here because the parties agreed that Judge Breyer was going to decide the fees. And he did that, and now they're unhappy with his result and they're asking a randomly selected panel of three judges from the Ninth Circuit to substitute their view. Didn't Judge Breyer have to under 23H? I mean, the district court has to approve any fees or decide fees for a class action. So there was the amount of the attorney's fees wasn't decided, right? You just bookended the amount. That's correct, Your Honor. We bookended anything from zero to $1.5 million. And in the settlement agreement, we provided that that issue would be submitted to Judge Breyer. We also provided in the settlement agreement that any amount that he awarded within those bookends would be a final decision, and the settlement agreement would remain in full force in effect. But I didn't see a waiver of an appeal right for that particular issue. Well, Your Honor, the only provision in that agreement that addresses appeal is the provision of the effective date. And the effective date provides, the definition of the effective date provides that if there is a, first it's going to be preliminary approval and then final approval, and then anyone who takes an appeal, that either there's going to be the expiration of the appeal period or any appeal that is brought would be resolved before the settlement agreement was effective. That's the only provision in that agreement which addresses appeal. And when we got to Judge Breyer issuing the final approval order, the plaintiffs then contacted us and said, all right, the agreement is effective. We want Wells Fargo to send out the credit reports now. And essentially said, you're going to be in breach of the agreement if you don't send out those credit reports. And by the way, we intend to appeal the attorney fee provision, to which we said, well, how can this be? You can't have it both ways. You can't say we're at the effective date, threaten us with breach of contract if we don't send out the credit reports and say, but we're going to pursue an appeal. So they're trying to interpret this contract both ways in their favor. Well, the cases that you cited were all merits cases, where if you've settled the merits, then you can't go ahead and appeal the merits. But our cases seem to say that the attorney's fees is an ancillary issue, that even where the merits are moot or they're undisputed or whatever, that the attorney's fees component lives on and you can continue litigating that. Why did you find any cases that was more analogous to this one, where it was an attorney's fees issue rather than a merits issue? No, Your Honor. I think the case that we found that was probably closest to this one was the Seidman case, which was a class action case where the court denied class certification and then stipulated the dismissal of the entire complaint with prejudice, with a reserving for the district court to award fees. The district court awarded fees, and then the plaintiff tried to appeal the denial of class certification. And the court said, that's waived because you didn't reserve it when stipulating the dismissal of the case. Well, the Slavin case isn't quite as strong as you suggest it is. If you look at the Slavin case, you see there's a couple things going on, including the cover letter attached to the stipulation. And they talk about waiver is the intentional relinquishment or abandonment of a known right. Where do we see the intentional relinquishment or abandonment of a known right in connection with the right to appeal? The attorney's fees in this case. In this case, Your Honor, I think they're in a couple of places in the contract. And they are, as the attorney's fees provision itself says, attorney's fees as awarded by the court, and the court is defined as Judge Breyer. And then also the provision which says any amount that he awards between 0 and 1.5 percent will be final and binding, irrespective of what that amount is. Where's that language, final and binding? Well, it's 3.26. It says final and binding? Well, that's my characterization. See, that's the problem. You know, that's how you get in trouble, lawyers do, by not telling us the truth. Characterizations aren't what was said. Where does it say final and binding? I'm sorry, Your Honor. It does not say that. Okay. I mean, you see what happens? Then we cease to trust everything you say when you try to spin it. What does it say? It says in the event the court denies in whole or in part any application made by class counsel pursuant to sections 3.23 and 3.2 through above, the award or awards class counsel less than $1,500,000 in fees and costs. The remainder of the terms of this agreement and of the settlement shall remain in effect. The remainder shall remain in effect. That doesn't say the attorney's fees is final and binding. You see what you've just done to yourself? Yes, Your Honor. All right. That's a warning, you know. You can't take liberties with language when you're talking about contracts. Final and binding attorney's fees? It's not there. I didn't see it. It's not there. I apologize, Your Honor. I guess you've waived all your other arguments, then, because the only thing you had in your red brief was jurisdiction and contract. So you're waiving the rest? Your Honor, we elected not to address those issues. So you intentionally and knowingly relinquished your opportunity to object to them? We felt that Judge Breyer's order was well-reasoned and correct, and we were also faced with a threat by Plaintiff's counsel that if we addressed the merits, that they would potentially sue Wells Fargo or sue my firm. So here we're outside of the record again, right? No, that's in their brief. That's in the record? That's in their brief. That's page 18 of their final brief. They get to sue us in the event that we address the merits. In light of that, we decided that we would let Judge Breyer's order speak for itself. So they can address the merits, but you can't? That's their contention of the effect of the Clear Sailing Clause. And we didn't want to run the risk of putting Wells Fargo, or I don't want to run the risk of putting my firm at the end of a lawsuit over that issue. But if any of Your Honors have any questions on the merits or would like us to submit supplemental briefing, we'd be happy to do that. Kennedy. Well, I have a possible question. With the trial judge's calculation of the total value of the settlement to the class, was that supported by any evidence in the record? Yes, Your Honor, I believe it was. He looked at the cost of obtaining the credit reports for the class members who submitted claims and then calculated the cost to Wells Fargo of purchasing the credit reports for those approximately 30,000 people who submitted claims and came up with a calculation of the value of the settlement based upon that. And then he also tried to attribute some value to the educational brochure that was sent out. If we were to reverse this order, would that – would we have to find that that finding was clearly erroneous under Rule 52? Well, I think, Mr. – that is the position being advocated by Mr. Smiljanic, that reliance upon the claims actually submitted by the class members, as opposed to the theoretical total cost of the defendants, was reversible error, and that the Court had no discretion to look at actual claims as opposed to the total cost of the defendant. That's the nub of the issue before the Court, is does the district court judge have the discretion to look at actual claims submitted in attempting to determine what's a reasonable attorney's fee for the plaintiffs? Well, when I was a district judge, the Scottish industry of class actions, with the victims getting 17 cents apiece and the lawyers all driving off and buying beaches at beach houses in Malibu, hadn't occurred yet, so I didn't have a lot of experience in that area. But I did exercise my discretion once in a while on attorney's fees. And the question is, when – what is the abuse here? Now, we've heard from the appellant. Why – what is your argument that there was not an abuse? Well, because, Your Honor, I think the district court judge has an obligation to both the judicial system and to the absent class members to engage in a rigorous search and analysis of the actual value to the class and whether the fee represents a reasonable fee in light of the actual value to the class. And I think if you look at a number of sources here, they all indicate that the focus should be on what did the class actually get as opposed to what is some theoretical calculation that lawyers can come up with as to what the settlement might be worth. I mean, Judge Breyer said it was a pure fantasy to assume that Wells Fargo was going to spend $114 million on this settlement, and we all know that it was. We never would have entered into the settlement if that was the expectation. And so the question becomes, what should Judge Breyer look at in attempting to set a reasonable fee? And if you look at the – there's a whole host of authority from the advisory committee comments on Rule 2003 amendments to Rule 23 which say you're supposed to look at the actual value that's provided to the class. Congress, in enacting the Class Action Fairness Act, said the same thing, that you should look at in settlements where there is not money being provided to the class but coupons or some other types of rewards, you should look at the – whether there's true value to the class. Here, you should also look at the reaction of the class members, the claims filing rate, and the very low claims filing rate of less than 1 percent. There's also a case from the Fifth Circuit, Strong v. Bell South, which is right on point and held that Judge Breyer properly exercised his discretion in looking at actual claims rather than the theoretical or potential maximum cost to the defendants. So there are a series of, I think, precedents, both judicial policy statements and published decisions from the Fifth Circuit, which all support his decision. There's a recent case from the California Supreme Court, Chavez v. the City of Los Angeles, which also held – endorsed the principle that modest claims warrant modest fees. And that was one of the – I think it's a well-established principle in Federal law, and I think that was part of what was driving Judge Breyer and caused him to exercise his discretion in the way that he did. Kagan. May it please the Court. The district court has discretion in this case. What it doesn't have, however, is the ability to go beyond the requirements of the law. This Court looks de novo at whether or not the district court applied legal principles properly in analyzing the fee award in this case. It's our – it's our simple contention that the district court, by its own words, ignored the legal precedent in the Ninth Circuit by determining a fee based upon the actual claims made in a case where the defendant agreed to provide a benefit, a benefit that doesn't have a value we've pulled out of thin air, but a benefit based upon what the defendant itself has to pay for that benefit. And it agreed to make that benefit available for all 3.8 million class members. That is a common fund case. The district court misapplied the principles, and as this court did in the Williams case, where the district court misapplied the legal fees award in exactly the same manner by considering the claims made as opposed to the overall benefits that were being provided to the class, we – we submit that this court should in fact reverse the district court for misapplying those principles. We've – Judge Breyer distinguished the Williams case, and you know on what ground. What's the problem with his distinction? I'm sorry, Your Honor? Judge Breyer distinguished the Williams case from this case. Yes, Your Honor. And I believe that's an example of a – a decision-driven order, because in that case, his distinguishment of it was in the class action notice itself. It provided what that overall benefit value calculated out to be in that case. Well, in this case, the class notice told all 3.8 million people that they were going to be entitled to these credit reports. The credit reports are worth $15.50. And I believe the district court found a distinction without a difference in the Williams case. I don't believe this distinction made any – any substantive – has any substantive value whatsoever. Which is why we believe that this court applying the Mexican – the Sixth Mexican Workers case should itself say, based upon a simple arithmetic calculation, the fee in this case was by one estimate 2 percent of the common fund, and by another estimate 1 percent of the common fund. And under either circumstance, the fee was eminently reasonable, well within the 25 percent benchmark that the Sixth Mexican Workers Ninth Circuit decision provided. And this court should do what the Sixth Mexican Workers panel did, and direct the district court to enter judgment for the amount of attorneys' fees and the full amount. Because in this case, it was so well beneath the benchmark, and the district court went so out of – out of bounds in its decision in refusing to consider the actual overall benefits, that we believe this court should do so. It's pure sophistry. It's pure moondust for the defendant to get up here and start citing cases to this opposition, that we waived our right to appeal in this case, when we clearly didn't. I have just one other question. What does it mean that you bought off objectors' counsel? Your Honor, that's also a matter completely outside the record. But we had objectors in this case. We wanted to be able to have finality to the final judgment in this case, the final judgment vis-a-vis the class benefits. That's what all these negotiations were about. We wanted the benefits to the class to go forward, and apparently no good deed goes unpunished. We didn't want the class to have to wait around for the two years it's taken for this attorney's fees issue to get before this court. So we tried to see to it that the final judgment was final as to the class benefits, and that was a settlement with the objectors to be sure that they would not object to the entry of a final judgment so that the class benefits could go forward and the class wouldn't have to wait. While we attempted to have the court system apply the appropriate legal principles and give us the attorney's fees, we were entitled to under either a lodestar analysis or a common fund analysis. And so, therefore, we submit that this court should do what the Six Mexican Workers case did, should follow the Williams principles, should certainly agree that Slavin and this progeny does not stand for the proposition that we have somehow waived our right to be here today, and should direct the district court to enter judgment in the amount of attorney's fees that we negotiated with them after long, hard negotiations with Judge Fern Smith as our mediator. Thank you. Thank you for your argument. This case is submitted and we are adjourned. All rise.
judges: Goodwin, Trott, Ikuta